UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE PRUDENTIAL INSURANCE
COMPANY,

       Plaintiff,

v.                        Case No.  8:12-cv-2423-T-33TGW

JOYCE K. MOSCHELLA, STEVEN P.
HAMPSON, TRACEY A. HAMPSON, SEAN
M. HAMPSON, and MEGAN A.
HAMPSON,

       Defendants.
_____/

## ORDER

     This matter comes before the Court pursuant to the March 14, 2013, Motion for Summary Judgment (Doc. # 29) filed by Steven P. Hampson, Tracy A. Hampson, Sean M. Hampson, and Megan A. Hampson (hereafter the "Hampson Siblings").  On April 4, 2013, the Bankruptcy Trustee filed a Motion to Intervene and Motion to Substitute Party Defendant on behalf of bankrupt Defendant Joyce K. Moschella (Doc. # 33) as well as the Bankruptcy Trustee's Motion to Refer Case to Bankruptcy Court (Doc. # 34).  The Bankruptcy Trustee also filed a Response in Opposition to the Hampson Siblings' Motion for Summary Judgment on April 22, 2013. (Doc. # 40).

     The Hampson Siblings filed their Motion to Withdraw Reference to Bankruptcy Court (Doc. # 39) on April 16, 2013.

The Hampson Siblings also filed their Motion to Withdraw Applicant's Response to Defendant's Motion for Summary Judgment (Doc. # 41) on April 29, 2013. The Court construes the "Motion to Withdraw Applicant's Response" as a motion to strike the Trustee's response to the Motion for Summary Judgment. The Trustee responded to the construed motion to strike on April 30, 2013. (Doc. # 42).

For the reasons that follow, the Court denies the Hampson Siblings' Motion for Summary Judgment, declines to refer this matter to the Bankruptcy Court, grants the Trustee's motion to intervene and to substitute the Trustee, and denies the Hampson Siblings' construed motion to strike the Trustee's response in opposition to the Motion for Summary Judgment.

I.   **Factual Background**

Decedent Patrick Hampson and Elizabeth Hampson were married on July 6, 1970, in Livingston, New Jersey. (Doc. # 29 at 28, ¶ 1). The Decedent and Elizabeth Hampson had four children: Steven P. Hampson, Sean M. Hampson, Megan A. Hampson, and Tracey Hampson. The Decedent and Elizabeth Hampson divorced in Pinellas County, Florida in February 1998. At the time of the divorce, two of the Hampson Siblings were minor children: Sean Hampson and Megan Hampson. In the context of the divorce, the Decedent and Elizabeth Hampson

2

reached a Memorandum of Understanding, which is before the
Court. (Doc. # 29 at 31-37).  The Memorandum of Understanding
is incorporated into the formal divorce decree and contains
terms for the protection of the minor children as follows:

**7.** **CHILD SUPPORT**: The husband agrees to pay $100.00 per
month towards the support of his 12-year old daughter
Megan Hampson.  The husband also agrees to pay the sum of
$229.87, commencing on February 1, 1998, for health
insurance.  Payment shall be made directly to the wife,
and not through the depository.  The husband may obtain
less expensive comparable coverage at h[is] discretion.
The parents' obligation to pay the agreed upon expenses
for their children shall cease upon the occurrence of any
of the following:

    A.   Death of the child.
    B.   The child graduating from high school or
        quitting school for a period of one month or
        more.
    C.   A lawful entry of the child into the Military
        Service for a period of one year or more.
    D.   The valid marriage of the child.
    E.   The child otherwise becomes emancipated.

**18.** **INSURANCE**
    **A.** **MEDICAL INSURANCE:** The HUSBAND shall maintain major
medical, dental insurance for the children as
stated in paragraph 7 provided by the wife's
employer under the family plan.  Should there be a
change of Health Insurance Policy, it shall be of
equitable value.  The HUSBAND also agrees to share
equally co-payments for both children provided by
the wife's employer under the family plan.  Both
parents agree to continue to provide for the
children at all times until the children finishes
(sic) their high school education or reach the age
of eighteen or the emancipation of the minor
children.
    **B.** **LIFE INSURANCE:** The one Life insurance policy in
the name of the HUSBAND, valued at $80,000, shall
remain in his name, naming all four children as

3

> beneficiary with Steven Hampson as executor.  Life
> insurance policies in the name of the WIFE shall
> remain in her name, naming the children as
> beneficiaries.  A life insurance policy was taken
> out on Sean Hampson for college.  If for any reason
> anything happens to Sean Hampson the policy is to
> be divided between the husband and the wife solely.

(<u>Id.</u> at 34-35).

The Prudential Insurance Company of America insured the life of the Decedent under policy # G-14800-NJ.  That insurance policy provides in the section entitled "Beneficiary Rules" that "You have the right to choose a Beneficiary for the Coverage under this Prudential Group Contract." (<u>Id.</u> at 17).  That policy further specifies that "You may change the Beneficiary at anytime without the consent of the present Beneficiary." (<u>Id.</u>).  The relevant policy also provided that the policy could be freely assigned. (<u>Id.</u> at 19).

On November 26, 1997, the Decedent designated Steven P. Hampson and Sean Hampson as the beneficiaries on life insurance policy # G-14800-NJ. (<u>Id.</u> at 25).  On or about September 7, 2007, the Decedent designated Joyce K. Moschella as the primary beneficiary of the same insurance policy. (Doc. # 29 at 69).  It appears that Moschella was the Decedent's fiancé. (Doc. # 33 at ¶ 4).  The Decedent died on January 13, 2012.

4

II.  **Procedural History**

On October 25, 2012, Prudential filed this interpleader action naming Moschella and the Hampson Siblings as Defendants. (Doc. # 1).  Prudential explained that the death benefit payable under the insurance policy was $16,270.77, that Moschella and Steven Hampson had each made a claim to the proceeds, and that Prudential, a disinterested stakeholder, was unsure as to the rightful beneficiary.  On January 25, 2013, Prudential paid $16,270.77 into the Court's Registry and has since been dismissed from this action. (Doc. # 23).

On January 29, 2013, this Court entered its Case Management and Scheduling Order (Doc. # 24) setting this case for a bench trial during the September 2013, trial term.  In addition, the Court referred this matter to mediation to be presided over by the Honorable Anthony E. Porcelli, United States Magistrate Judge. (Doc. # 30).  The mediation is currently scheduled to take place on May 23, 2013.

On March 14, 2013, the Hampson Siblings filed a Motion for Summary Judgment demanding the proceeds. (Doc. # 29).  The record reflects that the Motion was mailed to Moschella on March 12, 2013, by U.S. Mail Signature Confirmation. (Doc. # 38).

5

On April 4, 2013, the Chapter 7 Bankruptcy Trustee notified this Court that Moschella filed for protection under Chapter 7 of the United States Bankruptcy Code in case 8:12-bk-19024-KRM on December 20, 2012. (Doc. # 34).  The Trustee requests that this Court refer this case to the Bankruptcy Court for final disposition. (<u>Id.</u>).  The Trustee also moves to intervene in this action and to be substituted for Moschella as the real party in interest. (Doc. # 33).  The Trustee filed a response in opposition to the Hampson Siblings' Motion for Summary Judgment on April 22, 2013, on behalf of Moschella. (Doc. # 40).

On April 16, 2013, the Hampson Siblings filed their Motion to Withdraw Reference to Bankruptcy Court (Doc. # 39), in which they express their opposition to proceeding in Bankruptcy Court.  The Hampson Siblings also seek an Order striking the response to the Motion for Summary Judgment filed by the Trustee on behalf of Moschella.

### III. <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

6

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. Id. However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only

proper, but required.  <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert.</u> <u>denied</u>, 456 U.S. 1010 (1982).

## IV.  <u>Analysis</u>

### A.  <u>Bankruptcy Issues</u>

Before turning to the substance of the Motion for Summary Judgment, the Court will address the issues arising from Moschella's bankruptcy filing.  The Court acknowledges that the present dispute concerning life insurance benefits is related to Moschella's bankruptcy case; however, the Court declines to refer this case to the Bankruptcy Court.  The Motion for Summary Judgment is ripe for the Court's review, and this case involves only $16,270.77.  The Court determines that it would be unfair to the pro se Defendants to be shuffled from one court to the next for the resolution of this case.

Rather, the Court determines that the interests of justice require the Court to retain the matter, especially so that the parties may participate in the mediation conference duly scheduled before the United States Magistrate Judge. Unlike a private mediation, which can be costly, the mediation set before Judge Porcelli presents a unique opportunity to have the dispute resolved by a judicial officer without incurring any additional expenses.

8

The Court acknowledges that Moschella has filed for protection under the United States Bankruptcy Code; however, the automatic stay provision of 11 U.S.C. § 362 does not divest this Court of jurisdiction over this interpleader action. This is because the purpose of the interpleader statute is to determine title to the res, and the res is, at this point, not property of any debtor within the meaning of the automatic stay provision. See Nat'l Coop. Refinery Ass'n v. Rouse, 60 B.R. 857, 859 (D. Colo. 1986)("Considerations of fairness and due process require a determination of whose 'property' the res is be made first."). Furthermore, the right to pursue an interpleader action is not affected by the fact that one claimant to the funds has filed for bankruptcy and thus, a debtor may not use the automatic stay provision to prevent a determination of ownership to interpleaded funds. Price & Pierce Int'l, Inc. v. Spicers Int'l Paper Sales, Inc., No. 84-cv-3728, 1985 U.S. Dist. LEXIS 18395, at *1-3 (S.D.N.Y. June 28, 1985)(denying motion to transfer interpleader action to bankruptcy court upon an interpleader claimant's filing for bankruptcy protection and finding that automatic stay provision did not apply because, in interpleader actions, a "defendant" is more akin to a plaintiff). Thus, the Court

denies the Trustee's Motion to refer this case to the Bankruptcy Court. (Doc. # 34).

Nevertheless, the Court will consider the Trustee's submission in opposition to the Hampson Siblings' Motion for Summary Judgment because it contains pertinent arguments touching on the issues presented. Although the Hampson Siblings contend that the Trustee's response to the Motion for Summary Judgment was untimely filed, the Court excuses the untimely submission. In addition, the Trustee is entitled to proceed as the real party in interest in this action under Rule 24(a) of the Federal Rules of Civil Procedure and is substituted in place of Moschella pursuant to Rule 25(c) of the Federal Rules of Civil Procedure. See also Parker v. Wendy's Int'l, 365 F.3d 1268, 1272 (11th Cir. 2004)("Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it."); Camp v. St. Paul Fire & Marine Ins. Co., 616 So. 2d 12, 15 (Fla. 1993)("Whatever claim --including potential and contingent claims-- that the bankrupt owns at the time of his petition becomes a part of his estate, with the title thereto vested in the trustee.")(internal citations omitted).

B.  <u>**Summary Judgment Analysis**</u>

The Court has jurisdiction pursuant to the interpleader statute, 28 U.S.C. § 1335; however, in order to address the Motion, it is appropriate to evaluate the Florida state court "Final Judgment of Dissolution of Marriage," which incorporates and adopts the Decedent and Elizabeth Hampson's Memorandum of Understanding.  The Memorandum of Understanding states: "The one Life insurance policy in the name of the HUSBAND, valued at $80,000, shall remain in his name, naming all four children as beneficiary with Steven Hampson as executor." (Doc. # 29 at 35).

Prudential brought this dispute to the Court describing competing claims between the Hampson Siblings and Moschella for the life insurance proceeds.  Although the Memorandum of Understanding describes an $80,000.00 life insurance policy (<u>Id.</u>), the Decedent's answers to Family Law Interrogatories in the divorce proceedings describe a $50,000.00 life insurance policy (<u>Id.</u> at 47), and the actual death benefit in this case is only $16,270.77.  Accordingly, the Court is unable to determine whether the life insurance proceeds here can be definitively traced to the life insurance proceeds described in the Memorandum of Understanding referencing the Hampson Siblings.

Even assuming that the life insurance proceeds here can be traced to the Memorandum of Understanding, the Court, nevertheless, denies the Hampson Siblings' Motion for Summary Judgment.

The Hampson Siblings principally rely upon the holding of Prudential Insurance Company of America v. Boyd, 781 F.2d 1494 (11th Cir. 1986). There, the decedent entered into a divorce decree in which he agreed to maintain life insurance for his minor children but then changed the beneficiary on the life insurance policy to his second wife. After he died, the first wife (on behalf of the minor children) and the second wife made competing claims to the insurance proceeds, and the insurance company filed an interpleader action. The court determined that the insurance proceeds belonged to the first wife for the benefit of the minor children:

> The divorce decree required [decedent] to name his children as irrevocable beneficiaries of his "existing life insurance protection." No evidence was introduced to controvert the fact that [decedent] was legally bound by this requirement. Florida courts have consistently construed provisions similar to this one to require the insured to name the person so designated by the divorce decree to be the beneficiary of the life insurance policy, and to nullify attempts to name another person as beneficiary.

Id. at 1496. Relying on Dixon v. Dixon, 184 So. 2d 478 (Fla. 2d DCA 1966), the Boyd case underscored: "This Court is

required by <u>Dixon</u> to hold that, by the terms of his divorce decree, [decedent] was divested of his ownership of the proceeds of his life insurance policy with Prudential.  The decree created an indefeasible interest in the proceeds of this policy in the two minor children by [his] first marriage." <u>Boyd</u>, 781 F.2d at 1497.

In <u>Dixon</u>, "the question presented" was "whether the [divorce] stipulation and decree amounted to a divesting of the incidents of ownership similar to a gift or only a requirement for change of beneficiary, revocable at will." 184 So. 2d at 481.  The court determined, "We hold that the terms of the stipulation were so encompassing as to amount to a surrender of the essential incidents of ownership.  If a person may make a parole gift of his policy ownership, A fortiori he may, by written stipulation concurrent with the bargaining inherent in a divorce settlement, similarly divest himself of his ownership interest in an insurance policy." <u>Id.</u>

However, the present case can be distinguished on several important bases.  First, the <u>Boyd</u> and <u>Dixon</u> cases involved the death of the insured parent while the children were minors.  Here, there is no indication that any of the children are still minors.  Indeed, Megan Hampson was born in 1985, Sean

13

Hampson was born in 1980, and Steven Hampson was born in 1976. The record is silent regarding Tracey Hampson's age.[1]

More importantly, in the <u>Boyd</u> and <u>Dixon</u> cases, the divorce agreements contained language creating indefeasible rights to the proceeds in minor children.  Specifically, in <u>Boyd</u>, the relevant instrument required the decedent to name his children as "irrevocable beneficiaries" of his life insurance policy. 781 F.2d at 1495.  Likewise, in <u>Dixon</u>, the court determined that the divorce stipulation's terms concerning life insurance "were so encompassing as to amount to a surrender of the essential incidents of ownership" of the policy. 184 So. 2d at 481.

In the present case, the Memorandum of Understanding does not contain the requirement that the decedent name his children as *irrevocable* beneficiaries.  Rather, from reading the Memorandum of Understanding in its entirety, the Court determines that the interest of any of the Hampson Siblings in the proceeds was inchoate, at best.  The Memorandum of Understanding contemplated that the parents' obligations to

---

[1] In addition, it should be noted that there is some ambiguity as to why Tracey Hampson would have any claim to the proceeds in the first place.  She was not designated as a beneficiary on the Decedent's November 26, 1997, election form (Doc. # 29 at 25-26), and she is not named in the Memorandum of Understanding. (<u>Id.</u> at 31-36).

support the children would not extend into perpetuity.[2]
Rather, the parents identified several contingencies that
would extinguish the support obligations, including graduation
from high school or marriage.

As succinctly stated in <u>Cadore v. Cadore</u>, 67 So. 2d 635,
637-38 (Fla. 1953), "it is usually considered that the insured
has the title to the insurance, of which only a clear and
unequivocal act could divest him." As summarized in <u>Kohl v.
Blue Cross & Blue Shield of Florida, Inc.</u>, 955 So. 2d 1140,
1143 (Fla. 4th DCA 2007), "Where there is no [] provision
forbidding assignment, an insurance policy may be assigned as
any other chose in action." <u>See</u> <u>also</u> <u>McMullen v. St. Lucie
County Bank</u>, 128 Fla. 745, 749 (Fla. 1937) ("The rule is also
settled that a life insurance policy is a chose in action
which may be assigned in the same manner that other
instruments of like character are assigned."). Here, the
insurance policy in question granted the Decedent the right to

---

[2] The Trustee persuasively suggests that the life
insurance provisions in the Memorandum of Understanding were
included to secure the payment of child support as provided in
Florida Statute Section 61.13(1)(c), which states: "To the
extent necessary to protect an award of child support, the
court may order the obligor to purchase or maintain a life
insurance policy or a bond, or to otherwise secure the child
support award with any other asserts which may be suitable for
that purpose."

change his beneficiary election.  Accordingly, the Court denies the Hampson Siblings' Motion for Summary Judgment.

In addition to looming factual issues concerning the identity of Tracey Hampson and identity of the policy, the Hampson Siblings have not demonstrated that they are entitled to the relief that they are seeking as a matter of law.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  The Hampson Siblings' Motion for Summary Judgment (Doc. # 29) is **DENIED.**

(2)  The Bankruptcy Trustee's Motion to Intervene and Motion to Substitute Party Defendant on behalf of bankrupt Defendant Joyce K. Moschella (Doc. # 33) is **GRANTED.**  The Bankruptcy Trustee is permitted to intervene in this action and is substituted in place of Moschella in these proceedings.

(3)  The Bankruptcy Trustee's Motion to Refer Case to Bankruptcy Court (Doc. # 34) is **DENIED.**

(4)  The Hampson Siblings' Motion to Withdraw Reference to Bankruptcy Court (Doc. # 39) is **DENIED AS MOOT.**

(5)  The Hampson Siblings' Motion to Withdraw Applicant's Response to Defendant's Motion for Summary Judgment (Doc.

16

\# 41), which the Court construes as a motion to strike the Trustee's Response to the Hampson Siblings' Motion for Summary Judgment, is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>16th</u> day of May, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All counsel and parties of record

17